STATE OF NEW JERSEY, EX REL. PLYMOUTH COMPANY, RELATOR, v. FREDERIC BIGELOW, SUPERINTENDENT OF BUILDINGS OF THE CITY OF NEWARK, DEFEND-ANT.

Decided July 22, 1924.

**Ordinances—Zoning—Business Block on Leading Business Street in a Part Set Out by Ordinance for Residence Purposes—Ordinance Not for Health, Safety or General Welfare, but the Contrary.**

On motion for a peremptory writ of *mandamus.*

Before Justices KALISCH, BLACK and CAMPBELL.

For the relator, *Spaulding Frazer.*

For the defendant, *Charles M. Myers.*

PER CURIAM.

The facts agreed upon between the counsel of the respective parties, and on which the relator bases his right to a peremptory writ of *mandamus* to be directed to Frederic Bigelow, superintendent of buildings of the city of Newark, commanding him to issue a permit to the relator for the erection of a four-story apartment-house and store building on land owned by the relator on South Orange avenue, in Newark, New Jersey, are as follows:

1. The Plymouth Company, the relator, is the owner of premises known as Nos. 1076-1086 South Orange avenue, Newark, New Jersey.

2. That on or about May 28th, 1924, application was made on behalf of the Plymouth Company to Frederic Bigelow, superintendent of buildings of the city of Newark, for a permit to erect a four-story apartment-house and store building at premises 1076-1086 South Orange avenue, Newark, New Jersey.

3. That the plans and specifications so submitted complied with the provisions of the building code and ordinance of the

city of Newark and other ordinances relating to the material and manner of construction of buildings of the type for which permit was applied.

4. That said Frederic Bigelow, superintendent of buildings as aforesaid, refused to grant a permit to said relator for such a building.

5. That the reason for the refusal of said Frederic Bigelow to grant said permit was that an ordinance of the city of Newark, commonly known as the zoning ordinance, prohibited the carrying on of business upon the portion of South Orange avenue for which said permit was asked, such portion of South Orange avenue being what is known as a residence zone.

6. The zoning ordinance of the city of Newark prohibits in residence districts buildings exceeding thirty-five feet in height, and has certain requirements as to the area which may be covered by buildings. These provisions are violated by the proposed building, which is four stories in height, and substantially more than thirty-five feet, and which covers a greater space than is permitted in residence districts.

7. The type of building proposed to be erected is under the zoning ordinance of Newark permitted to be erected both as to height and area restrictions on all parts of South Orange avenue, other than the portion to the west of Sanford avenue.

8. That South Orange avenue, in the city of Newark, is a street devoted to business purposes under the zoning ordinance of the city of Newark throughout the whole length of said street westerly from its beginning at the junction of Springfield avenue to Sanford avenue. From Sanford avenue westerly to the city line, a matter of four or five blocks, the zoning ordinance of the city of Newark prohibits the erection of any building for business purposes.

9. That there are operated upon South Orange avenue throughout its entire length, in the city of Newark, three trolley lines. That one of said trolley lines has a turnout within the so-called residence zone upon property owned by the trolley company outside the boundaries of South Orange avenue; that at approximately the same point there is the

termination of a jitney bus line which operates throughout the length of South Orange avenue, in the city of Newark.

10. That the present buildings on the portion of South Orange avenue to the west of Sanford avenue consist of a church building on the corner, at Sanford and South Orange avenues, and an orphan asylum directly opposite, and five dwelling-houses. That there are at the present time no stores on such portion of South Orange avenue.

11. That the buildings on the portion of South Orange avenue to the west of Sanford avenue, with the exception of the church and orphan asylum, conform to the requirements as to use, height and area in residence districts, and the same is true of the streets intersecting South Orange avenue and parallel thereto, both to the north and south of said avenue, west of Sanford avenue.

Upon what sound practical theory one of the leading business arteries of a populous city may be severed and the undeveloped severed part restricted to residential use, and thereby barring the street to further business extension and development is beyond the power of plain sense to discover. We think this attempted classification of South Orange avenue is purely arbitrary. In order to warrant such a classification it must be made to appear in what way the health, safety or general welfare of the public is conserved or advanced by the restriction. This has not been done. On the contrary, in the light of the agreed state of facts, it appears to us that to restrict four or five blocks of this business thoroughfare to residential use, is an act against the general welfare of the public and serves none of the ends contemplated by the statute. A business artery, leading from the heart of a growing and thriving city, cannot properly have an *impasse* created to bar its further progress and improvement, by a zoning ordinance, unless it clearly appears that the restriction is within the authorization of the statute, for example, necessary to conserve the health, safety and general welfare of the public.

A writ of peremptory *mandamus* is allowed.